**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

William Ray Holland,

        Plaintiff,

vs.                                                  Case No. 3:05-cv-289-J-MCR

Jo Anne B. Barnhart, Commissioner
of the Social Security Administration,

        Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on Plaintiff's appeal of a final administrative

decision of the Commissioner of Social Security (the "Commissioner") denying his

application for disability insurance benefits.[1]  The Court has thoroughly reviewed the

record, the briefs, and the applicable law.  For the reasons set forth herein, the

Commissioner's decision is **REVERSED** and the matter **REMANDED** for proceedings

not inconsistent with this opinion.

**I.      PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability and disability insurance

benefits ("DIB") on June 11, 2002, alleging an inability to work since May 7, 2001.  (Tr.

52-54).  The Social Security Administration ("SSA") denied this application initially and

on reconsideration. (Tr. 47-48, 44-45).  Plaintiff then requested and received a hearing

before an Administrative Law Judge (the "ALJ").  (Tr. 41, 28-32).  On December 8,

---

[1]  The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 12).

2004, the ALJ issued a decision concluding Plaintiff is not disabled within the meaning of the Social Security Act. (Tr. 13-19). Plaintiff filed a Request for Review by the Appeals Council (Tr. 9), and on February 4, 2005, the Appeals Council denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner. (Tr. 5-7). Plaintiff timely filed her Complaint in the U.S. District Court on April 4, 2005. (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    <u>Basis of Claimed Disability</u>

Plaintiff claims to be disabled since May 7, 2001, due to degenerative arthritis and injuries sustained after a motor vehicular accident in which he received injuries to his neck, back, left shoulder, left arm, and left hand. (Tr. 60). He further claims he is disabled due to depression and borderline intellectual functioning. (Tr. 14).

### B.    <u>Summary of Evidence Before the ALJ</u>

At the time the ALJ conducted the administrative hearing, Plaintiff was 47 years of age with a limited ninth-grade education. (Tr. 13). His past work includes employment as a home health care provider, wood worker, laborer, grocery clerk, and machine operator. <u>Id</u>. Plaintiff was insured for disability benefits through December 2005. <u>Id</u>. Plaintiff's medical history is set forth in the record. By way of summary,[2] Plaintiff was involved in a vehicular accident on May 7, 2001 after another vehicle collided into the left side of his vehicle. (Tr. 14). Following the accident, he was taken by ambulance to the emergency room at Winter Haven Hospital. (Tr. 110-204).

---

[2] This summary is limited to the evidence relevant to the issues on appeal.

Radiological studies from Winter Haven Hospital show Plaintiff had moderate multi-level

degenerative disk disease within the dorsal spine.  (Tr. 118).  On May 31, 2001, Plaintiff

began seeing Dr. Stan Zemankiewicz due to severe pain in his neck which radiated

through his left upper extremity.  (Tr. 135).  Dr. Zemankiewicz diagnosed Plaintiff with

discogenic pain on his cervical spine and minimal muscle spasm with first degree sprain

in his lower back.  Id.

   An MRI of Plaintiff's cervical spine, taken on June 5, 2001, showed abnormal

disc osteophyte complex at C6-C7 which resulted in moderate to severe foraminal

narrowing to the left and mild to the right and which made contact with the existing C7

nerve root on the left.  (Tr. 134).  The MRI also showed spondylotic disc bulging to the

left of midline, again causing foraminal narrowing to the left, and which also made

contact with the C6 nerve root on the left.  Id.  Dr. Zemankiewics administered physical

therapy on Plaintiff in an effort to ease his complaints of neck pain and muscle spasms,

and although it initially helped, it did not ease his pain significantly in the long run.  (Tr.

128-133).  Therefore, Dr. Zemankiewics initiated facet block injections on several

occasions which also temporarily helped the pain; however, by July 2002, Plaintiff had

not significantly improved.  Thus, Dr. Zemankiewics referred Plaintiff to Dr. Amann, a

neurosurgeon, for an opinion about surgery on Plaintiff's cervical root compression.  (Tr.

122).

   On August 27, 2002, Dr. Amann examined Plaintiff and noted:

   [Plaintiff complained of] a dull aching pain in the left side of the neck with
   radiation of pain down the left arm to the hand and fingers. Activity
   increases discomfort and pain.  His neck feels stiff most of the time with a
   pulling type of pain when he tries to twist or turn the head and neck. . . .
   [Plaintiff] also had significant complaints in the lumbar area.  He describes

3

> throbbing aching pain, left slightly more than right.  There is occasional
> sharp spasm pain with radiation into the legs, right equals left.

(Tr. 137).

Dr. Amann diagnosed Plaintiff with cervical and lumbar sprains or strains due to the motor vehicle accident and chronic myofascial syndromes in those areas due to the trauma.  (Tr. 139).  He further found Plaintiff had potential for root irritation or compression by the C6-7 disc disease and signs and symptoms consistent with radiculopathy with left C7 and possibly C6 root.  Id.  Dr. Amann attributed Plaintiff's symptoms in the lumbar area to soft tissue and pain from facet joints.  Id.  Dr. Amann stated Plaintiff would be a reasonable candidate for surgery – specifically, an anterior cervical diskectomy because he has had symptoms for over a year.  Id.  He recommended conservative treatment for Plaintiff's lumbar area and opined that Plaintiff was not able to work as a laborer at that time or for the foreseeable future.  Id.

In January 2003, Plaintiff underwent an independent medical examination[3] by a second neurologist, Dr. David McCraney.  (Tr. 148-151).  Dr. McCraney initially noted Plaintiff complained of left arm numbness, bad migraine headaches on his left side, neck pain, and low back pain.  (Tr. 148).  Upon examination, Dr. McCraney noted that Plaintiff was not particularly cooperative and he offered little effort during his motor exam.  (Tr. 149).  After examining Plaintiff's shoulder, Dr. McCraney found Plaintiff had significant impairment of forward flexion and moderate impairment of internal rotation on the left.  Id.  He also noted muscle spasm in the left trapezius.  Id.  He stated  Plaintiff

---

[3] The independent medical examination was conducted in conjunction with Plaintiff's litigation regarding his vehicular accident.

had terrible posture with exaggerated lumbar lourdosis and thoracic kyphosis. Id.   He

further opined, Plaintiff "may well need surgery; however, [he] has a number of

exaggerated pain behaviors on exam and some interpretation is required."   Ultimately,

he concluded he could not attribute Plaintiff's injury to the accident.   Id.

In March 2003, Plaintiff was examined by Dr. Stella King at the request of the

Disability Determination Office.  (Doc. 152-156).  Dr. King noted Plaintiff had neck and

back pain and difficulty with movement.  (Tr. 153).  She stated he was stiff and had

difficulty getting on and off the exam table, however, he was able remove his shoes

himself.  Id.  On exam, she found his gait to be "somewhat slow and halted," and he

was unable to perform the Romberg exam.[4]  Id.   She did not find inconsistencies or

poor effort in his actions.   Id.  She stated he sat very stiffly and appeared to have "very

limited movement of the shoulders and the upper back."  Id. at 155.   His motor strength

was 5/5 and he had normal muscle bulk and tone.   Id.   After a functional assessment of

Plaintiff, Dr. King opined:

> He can stand and/or walk two hours in an eight-hour day.  These
> limitations are imposed because of the stiff posture noted on the exam as
> well as some mild to moderate findings on his exam.  He can sit for less
> than six hours in an eight-hour day because of the above, as noted.  An
> assistive device is not medically necessary.  The amount of weight he can
> lift or carry frequently and occasionally is 10-15 pounds.  He does have
> postural limitations in bending, stooping and crouching.  He did have some
> difficulty with this today.  These can be performed occasionally.  He does
> not have any manipulative limitations of reaching, handling, feeling, or
> grasping.  These can be performed as needed.  He has no relevant visual,
> communicative, or workplace environmental limitations.

---

[4]  The Romberg Exam tests for truncal stability.  A patient is asked to stand with his feet together and eyes
closed.  See Hal Blumenfeld, M.D., PhD, Neuroanatomy through Clinical Cases,
http://www.neuroexam.com/content.php?p=37 (last visited June 22, 2006).

He has a chronic injury after sustaining injuries in a motor vehicle accident.  He does need continued evaluation of the neck, as he is a possible surgical candidate.  He likely will need to continue with conservative therapy for the back at this time, as it does not appear that surgical intervention is warranted.

(Tr. 155).

Also in March 2003, Plaintiff underwent a psychological evaluation by a licensed psychologist, Gregory C. Marone, on behalf the Office of Disability Determinations.  (Tr. 157-161).  Dr. Marone gave Plaintiff a primary diagnosis of Adjustment Disorder with Depressed Mood.  (Tr. 161).  Additionally, he diagnosed Plaintiff with dysthymia (late onset), chronic pain syndrome, and physical limitations associated with medical conditions.  Id.  He stated, "while [Plaintiff's] mental status did not seem severely vocationally limiting, physical/medical aspects may be insurmountable.  Long term prognosis likely will depend upon medical treatments available to him and his ultimate response to these treatments."  Id.

In April 2004, Plaintiff began treatment at Halifax Medical Center in Daytona Beach for his chronic back pain.  (Tr. 189-198).  Upon examination, Dr. David Heise noted Plaintiff had a "very restricted range of motion secondary to neck pain" including lateral rotation, lateral flexion.  (Tr. 194).  He also noted Plaintiff had "numerous areas of full muscle spasms" in his back.  (T. 195).  His back was very tight all over with limited range of motion – flexion forward and lateral flexion – which were due to pain.  Id.  Dr. Heise prescribed shots of Toradol and Decadron and ordered Prednisone, Lortab and Flexeril for Plaintiff.  Id.  He planned to have Plaintiff follow up with orthopaedics and primary.  Id.  A radiology consultation report was unremarkable.  (Tr. 189).

In July 2004, Plaintiff's attorney referred him to Mr. William Kremper, Ph.D. for a

6

general intellectual evaluation and mental status examination.  (Tr. 199-202).  Dr.

Kremper administered several psychological tests including the Wechsler Adult

Intelligence Scale-III, for which Plaintiff earned a 73 for Performance IQ, 77 for Verbal

IQ, and 73 on the Full Scale IQ.  (Tr. 201).  Dr. Kremper diagnosed Plaintiff with major

Depression -- recurrent without psychotic features, chronic back and neck pain due to

motor vehicle accident, and alcohol dependence in full remission.  (Tr. 202).

　　　Two nonexamining state agency physicians completed Physical Residual

Functional Capacity Assessments in October 2002 (Tr. 140-147) and March 2003 (Tr.

162-169).  These assessments are essentially identical.  They restrict Plaintiff to lifting

15-20 pounds occasionally and 10 pounds frequently.  They stated Plaintiff could stand

or walk about 6 hours in an 8-hour workday and he could sit about 6 hours in an 8-hour

workday.  They also restricted Plaintiff to occasional postural limitations for climbing,

bending, stooping, kneeling, crouching ,and crawling.

　　　Mr. Jeffrey Prickett, Psy. D., a nonexamining physician, completed a Psychiatric

Review Technique Form (Tr. 170-183)  and diagnosed Plaintiff with Affective Disorder

with Anhedonia, or pervasive loss of interest, in almost all activities and sleep

disturbance.  (Tr. 170, 173).  He opined Plaintiff is mildly limited in his activities of daily

living, and moderately restricted in his ability to maintain social functioning,

concentration, and pace.  (Tr. 180).

　　　Lastly, Dr. Prickett also completed a Mental Residual Functional Capacity

Assessment on Plaintiff.  (Tr. 184-187).  He found Plaintiff moderately limited in his

ability to: understand and remember detailed instructions; carry out detailed instructions;

maintain attention and concentration for extended periods; complete a normal workday

7

and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. (Tr. 184-85). Overall, he assessed Plaintiff as being "able to carry out simple instruction, make simple decisions and do routine tasks that are within his physical limits. He can concentrate on simple tasks. He would need an understanding supervisor and supportive work setting." (Tr. 186).

### C.    Summary of the ALJ's Decision

The ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits through December 31, 2005. (Tr. 13, 18). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 14, 18). At step two, the ALJ found Plaintiff's borderline intellectual functioning and degenerative disc disease with resultant chronic neck, left arm, and lower back pain "severe" based on the requirements in 20 C.F.R. § 404.1520(b). (Tr. 16, 18). At step three, the ALJ determined Plaintiff's severe impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1, Subpart P of Regulation No. 4. (Tr. 16, 18).

The ALJ stated that she carefully considered all of the medical opinions regarding the severity of Plaintiff's impairments, as well as Plaintiff's statements concerning his limitations, to determine Plaintiff's residual functional capacity ("RFC").    In doing so, the ALJ opined that "the testimony of [Plaintiff], particularly as it related to alleged physical limitations, was inconsistent with the weight of the medical evidence, was not wholly

8

credible and therefore failed to support a finding of disability." (Tr. 16, 19). Notably, the ALJ found that although some of Plaintiff's examinations demonstrated he had diminished strength in his left arm, others did not. (Tr. 16). Therefore, she stated Plaintiff's demonstration during the hearing, in which he demonstrated that he could not raise his left arm above his head nor could he make a fist, was unpersuasive. (Tr. 17). Moreover, after evaluating Plaintiff's symptoms, including pain, the ALJ stated the evidence showed Plaintiff has a medically determinable impairment that could reasonably be expected to produce the pain and other symptoms alleged, however, she concluded "the evidence did not support [Plaintiff's] allegations of the intensity and persistence of such pain and other symptoms." (Tr. 17).   The ALJ gave credence to the non-examining state agency physicians' opinions that Plaintiff could perform a limited range of light work, limited to simple routine tasks. (Tr. 17). Specifically, she found Plaintiff had the capacity to:

> lift and/or carry up to ten pounds on a frequent basis and up to 20 pounds on an occasional basis; stand and/or walk for a total of up to six hours per eight-hour workday; and to sit (with normal breaks) for a total of up to six hours per eight-hour work day; in addition he is limited to simple, unskilled work.

(Tr. 17, 19). As such, at step four, the ALJ determined Plaintiff could not return to his past relevant work and that he has no transferable skills. Id.

At step five, the ALJ forewent the opinion of a vocational expert and instead relied on the Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations in determining Plaintiff retained the residual functional capacity for a wide range of "light" work. (Tr. 18, 19). Moreover, the ALJ found Plaintiff's nonexertional limitations do not significantly erode his ability to perform light work. Id. at 18. As such, the ALJ

determined Plaintiff was not disabled within the meaning of the Social Security Act.  Id. at

18, 19).

## III.    STANDARDS OF LAW

### A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied

the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988),

and whether the findings are supported by substantial evidence.  Richardson v. Perales,

402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are

conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial

evidence is more than a scintilla – i.e., the evidence must do more than merely create a

suspicion of the existence of a fact, and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion.  Foote v.

Chater, 67 F.3d 1553, 1560 (11th Cir. 1995), citing Walden v. Schweiker, 672 F.2d 835,

838 (11th Cir. 1982) and Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991);

Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the

evidence as a whole, taking into account evidence favorable as well as unfavorable to

the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th

Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual

findings).

## B.    The Five Step Evaluation

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § § 404.1520, 416.920.  First, if Plaintiff is working at a substantial gainful activity, he is not disabled.  29 C.F.R. § 404.1520(b).  Second, if Plaintiff does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if Plaintiff's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d). Fourth, if Plaintiff's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if Plaintiff's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

## IV.    ANALYSIS

Plaintiff argues three issues on appeal.  First, Plaintiff asserts the ALJ erred by rejecting the opinion of the treating and examining physicians.  (Doc. 16, pp. 6-9). Second, he contends the ALJ erred in rejecting Plaintiff's complaints of pain.  Id. at 9-10. Finally, Plaintiff claims that the ALJ's failure to secure vocational testimony, in light of

Plaintiff's significant nonexertional impairments, was error.  Id. at 10-11.

A.     **Whether the ALJ Erred by Rejecting the Opinion of the Treating and Examining Physicians?**

In its Decision, the ALJ stated that "none of Plaintiff's treating doctors rendered an opinion on the issue of Plaintiff's disability or functional capacity," and subsequently concluded Plaintiff was not disabled because he was capable of performing light work. (Tr. 16, 18).  As an initial matter, Plaintiff argues the ALJ erred in making this statement because two of Plaintiff's examining doctors stated their belief that Plaintiff was limited in his functional capacity, and the nonexamining state agency physicians also noted Plaintiff's postural limitations.  (Doc. 16, p. 8).  Plaintiff argues the ALJ inexplicably ignored this evidence.  Id.

First, Plaintiff points to Dr. Amann's statement that Plaintiff would not be able to return to his work as a physical laborer and argues this statement is evidence that a treating physician expressed an opinion on Plaintiff's limitations. Id.   Next, Plaintiff refers to Dr. King's finding that due to severe restrictions on Plaintiff's functional capacity, he would not be able to complete an eight hour work day of any type.  Id.  Plaintiff further points out that both Dr. King and the nonexamining physicians found Plaintiff had postural limitations, in that he could only occasionally climb, balance, stoop, kneel, crouch, and crawl.  Id.   Plaintiff argues the ALJ ignored all of this evidence in concluding he had the residual functional capacity to perform a limited range of light work and thus, was not disabled.   Id.

The Commissioner, on the other hand, argues the ALJ's decision coincides with Plaintiff's treating physician, Dr. Amann's, opinion that Plaintiff would not be able to

return to his past work as a laborer.  (Doc. 20, p. 9).  The Commissioner next argues

even though Dr. King and the state agency physicians placed postural limitations on

Plaintiff, the ALJ was not required to adopt such limitations in formulating Plaintiff's RFC.

Id. at 10.  Rather, the Commissioner argues, Plaintiff's RFC is an assessment which is

reserved to the Commissioner and which should be based on all relevant evidence in the

case record including medical evidence and relevant non-medical evidence.  Id.

     Notably, the Commissioner admits that while the physicians assessed postural

limitations, other evidence in the record caused the ALJ to exclude these postural

limitations.  Namely, the Commissioner points out that Dr. McCraney characterized

Plaintiff as having "exaggerated pain behaviors," and Dr. King and the state agency

physicians disagreed on the amount of time Plaintiff could stand during an 8 hour period.

Id. at 11.  The Commissioner thus argues the ALJ properly weighed all of the evidence of

record and properly determined Plaintiff's ability to perform work related activities.  Id. at

12.

     This initial argument focuses on the weight the ALJ allocated to the opinions and

findings of Plaintiff's treating, examining, and nonexamining physicians.   Plaintiff is

correct that the opinion of a treating physician, such as that of Dr. Amann, "must be

given substantial or considerable weight unless 'good cause' is shown to the contrary."

Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing, Lewis v. Callahan, 125

F.3d 1436, 1440 (11th Cir. 1997)).  Moreover, a treating physician's opinion is entitled to

more weight than a consulting physician's opinion,  Wilson v. Heckler, 734 F.2d 513, 518

(11th Cir. 1984); 20 C.F.R. § 404.1527(d)(2), and an examining physician's opinion is

generally entitled to more weight than a nonexamining physician's opinion.  20 C.F.R. §

404.1527(d)(1).

The determination of whether Plaintiff can perform work-related activities boils down to a question of Plaintiff's RFC, which is an assessment left to the discretion of the Commissioner.  SSR 96-5p, 61 FR 34471.  The Commissioner should assess Plaintiff's RFC by considering all relevant evidence in the case record.  Id.  If an adjudicator finds that a treating physician's opinion is worthy of controlling weight under the Regulations, then the adjudicator must adopt such opinion in its RFC assessment.

Here, the only treating physician to opine on the issue of Plaintiff's disability or functional abilities, was Dr. Amann.  He opined Plaintiff "is not able to work as [sic] laborer at this time or for the foreseeable future."  (Tr. 139).  Thus, although the ALJ incorrectly stated "no treating physician has expressed an opinion regarding the [Plaintiff's] functional capacity or on the issue of disability," her determination that Plaintiff is unable to perform any of his past relevant work, which included his work as a laborer, was wholly consistent with the only treating physician's opinion.   As such, the ALJ did not err in the weight she accorded the treating physician's opinion.

Nevertheless, the ALJ failed to specifically discuss the exertional and postural limitations which Dr. King, an examining physician, and the state agency nonexamining physicians placed on Plaintiff.  The ALJ stated that Dr. King diagnosed Plaintiff with neck and lower back pain, but concluded Plaintiff could perform sedentary to light work.  (Tr. 15).  Dr. King, however, never opined Plaintiff could perform sedentary to light work; rather, she stated:

> He can stand and/or walk two hours in an eight-hour day.  He can sit for
> less than six hours in an eight hour day. . . .The amount of weight he can
> lift or carry frequently and occasionally is 10-15 pounds.  He does have

14

postural limitations in bending, stooping, and crouching. . . .These can be performed occasionally.

(Tr. 155). The ALJ apparently read Dr. King's opinion regarding Plaintiff's restrictions and capabilities as opining that Plaintiff can perform sedentary to light work. This, however, is inaccurate, as discussed *infra*.

Although the assessment of Plaintiff's RFC is left to the ALJ and although examining doctors' opinions are not usually granted the same weight as that of the treating physicians', the ALJ is required to consider their opinions, weigh them according to the factors listed in the regulations, and provide appropriate explanations for accepting or rejecting such opinions. 20 C.F.R. §404.1527(d); SSR 96-5p. Here, the ALJ conclusively stated Dr. King determined Plaintiff could perform sedentary to light work. (Tr. 15). This conclusion is not consistent with Dr. King's finding that Plaintiff can only stand or walk for two hours in an eight hour day and can sit for less than six hours. (Tr. 155). Importantly, a RFC assessment should determine whether Plaintiff is able to perform work on a regular and continuing basis for 8 hours per day, 5 days a week or on an equivalent work schedule. SSR 96-9p. Essentially, Dr. King opined Plaintiff could not work a full 8-hour day.

Social Security Ruling 83-10 sheds further light on this issue in that it defines sedentary[5] work as generally requiring periods of standing or walking which total no more than about two hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. SSR 83-10. Thus, it is unclear if Dr. King's

---

[5] The Social Security Ruling's definitions are derived from a combination of the provisions of Appendix 2 of the regulations, the vocational reference material notes in section 200.00(b) of Appendix 2, and the adjudicative experience of the Social Security Administration. See SSR 83-10.

findings would qualify Plaintiff for sedentary work.  Arguably, they would not in light of the fact the limitations she placed on Plaintiff add up to less than 8 hours per day.  While a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision that the Plaintiff is disabled, the adjudicator must make an individualized and fact intensive determination as to whether Plaintiff has any skills, education, work experience, etc., which may allow for direct entry into skilled work under the guidelines in the regulations.  Id.    Notably, the ALJ did not engage in such an analysis and failed to specifically mention the limitations Dr. King placed on Plaintiff.

Additionally, sedentary work is less stringent than light work.  A job that requires a good deal of walking or standing generally falls in the light category.  Id.  The SSR further states that "relatively few unskilled *light* jobs are performed in a seated position." Id. (emphasis added).   Thus, Dr, King's findings clearly do not qualify Plaintiff for light work.

While the ALJ may disregard an examining physician's opinions, she must first weigh them according to the factors set forth in the regulations.  Here, the ALJ failed to mention Dr. King's findings concerning Plaintiff's limitations and in fact, she incorrectly stated that Dr. King concluded Plaintiff could perform sedentary to light work.   (Tr. 15). As such, the Court finds the ALJ failed to set forth sufficient reasoning for rejecting Dr. King's finding that Plaintiff could not work a full 8-hour work day.  Thus, the Court will remand this case so the ALJ can reconsider Dr. King's, and any other physician opinion regarding Plaintiff's physical abilities to perform work-related activities on a sustained basis.  The ALJ should set forth, in detail, her reasoning for accepting or rejecting such

16

opinions.

As further reason for remanding this case, the Court notes the ALJ found that the nonexamining state agency physicians concluded Plaintiff could perform a limited range of light work, limited to simple routine tasks.  (Tr. 17).  Although this statement may in fact be accurate based on the nonexamining state agency physicians' physical and mental residual functional capacity ("RFC") assessments (Tr. 140-147; 162-169, 170-183), the ALJ failed to mention that Dr. Prickett, the state agency physician who completed the mental RFC, specifically opined Plaintiff was moderately limited in his ability to complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 185).   Nor did he mention Dr. Prickett's statement that Plaintiff would need an understanding supervisor and supportive work setting even when completing simple routine tasks.  (Tr. 186).  Further, the ALJ failed to address any of Plaintiff's postural limitations which were recognized by the state agency physicians and Dr. King.

The ALJ's failure to mention Plaintiff's postural limitations found by both Dr. King and the state agency physicians, when viewed in conjunction with the fact that the ALJ misinterpreted Dr. King's findings, was error.  While postural limitations standing alone may not significantly alter an opinion as to whether Plaintiff is capable of performing light or sedentary work, such limitations combined with other factors may limit Plaintiff's ability to work.  See Wilson v. Barnhart, No. 03 C. 2001, 2004 WL 557356, at * 9 (N. D. Ill. March 18, 2004).  For instance, when considered in conjunction with the fact that two doctors have opined Plaintiff is limited in his ability to work a full 8 hour day and Plaintiff's

own testimony regarding the severity of his pain,[6] Plaintiff's postural limitations may be sufficient to preclude Plaintiff from working.   Additionally, the Court notes that although the Commissioner sets forth persuasive reasoning as to why the ALJ rejected the physicians' opinions regarding Plaintiff's postural limitations, the ALJ did not set forth such reasoning herself in her decision.

In sum, the ALJ is not required to adopt Dr. King's or the state agency physicians' findings, however, she cannot ignore such findings. 20 C.F.R. §404.1527(d).  The ALJ conclusively and incorrectly concluded that Dr. King found Plaintiff capable of performing not only sedentary work but also light work, and in effect she ignored Dr. King's findings. (Tr. 15).   Because the ALJ's statement with respect to Dr. King's findings is inconsistent with Dr. King's actual opinion, it is unclear whether the ALJ would have disregarded Dr. King's findings or whether such findings would have changed the ALJ's RFC assessment of Plaintiff, had the ALJ interpreted Dr. King's opinion as this Court does (i.e., that Plaintiff cannot work a full 8 hour day on a regular basis).  See Bagwell v. Barnhart, 338 F. Supp. 2d 723, 733 (S. D. TX. 2004) (remanding the case because the ALJ's decision was not supported by substantial evidence since there were internal inconsistencies in the ALJ's findings and the court could not effectively perform its assigned review function).   Moreover, the ALJ has an obligation to weigh all medical source opinions, including those of Dr. King and the nonexamining physicians, and provide an appropriate explanation for accepting or rejecting such opinions.  SSR 96-5p.

---

[6] Although the ALJ was not persuaded by Plaintiff's testimony with regard to the severity of his pain, it is undisputed the Plaintiff has consistently complained of pain since his accident in May 2001.  The Court will address the pain issue in the next section of this order, however, even some pain in combination with postural limitations may make a difference in a RFC assessment.  See Wilson v. Barnhart, No. 03 C. 2001, 2004 WL 557356, at * 9 (N. D. Ill. March 18, 2004).

18

Here, it is unclear if the ALJ considered all of the opinions of Plaintiff's consulting and state agency physicians because she only discussed the evidence which favored her conclusion, and simply ignored the evidence which did not.  Because the ALJ did not adequately explain her reasoning for rejecting some of the evidence which arguably does not support her decision, the Court is unable to determine whether such decision is supported by substantial evidence.   As such, the Court will remand this case for the ALJ to reconsider the physicians' findings, weigh them according to the factors listed in the regulations, and provide appropriate explanations for accepting or rejecting such opinions.  20 C.F.R. §404.1527(d); Social Security Ruling (SSR) 96-5p.

**B.**     **Whether the ALJ Erred in Rejecting Plaintiff's Complaints of Pain**

During the hearing, Plaintiff testified he experiences pain in his lower back all the way down his left side and his neck and cervical spine.  (Tr. 209).  He further testified that his left hand feels numb, limp, and he feels sharp pains all the way down his hand. Id.  He stated his left side spasms incessantly and he feels constant pains in his left lower leg and back.  Id.  In response to the ALJ's question asking Plaintiff how high could he lift his left arm, Plaintiff demonstrated his capacity to lift his left arm.  Id.  The ALJ noted that he could lift his left arm to about his shoulder and could lift his hands to about his ear.  Id. at 210.  Plaintiff also testified he gets headaches and has trouble sleeping because of the shooting pain he experiences.  Id. at 211.  He stated he sleeps only about two to three hours per night and a lot of times he has to sleep sitting up in his chair because of his leg and back spasms.  Id. at 212.

The ALJ ultimately concluded Plaintiff was not disabled and in doing so, she

based her decision, in part, on the fact that she found Plaintiff's testimony, particularly as it related to Plaintiff's alleged physical limitations, inconsistent with the weight of the medical evidence and not wholly credible. (Tr. 16). Specifically, the ALJ noted "some examinations of the [Plaintiff's] left arm showed diminished strength and others did not. In no event, however, was there a finding that the [Plaintiff] could not raise the arm above his hand [sic] or that he could not make a fist." (Tr. 16-17). The ALJ then stated she had reviewed all of the available evidence and concluded that "although the evidence showed the claimant has medically determinable impairments that could reasonably be expected to produce the pain and other symptoms alleged, the evidence did not support the claimant's allegations of the intensity and persistence of such pain and other symptoms. (Tr. 17).

Plaintiff argues the ALJ's reasons for discrediting Plaintiff's testimony are not supported by substantial evidence. (Doc. 16, p. 10). Namely, he states his complaints of arm pain are logical and consistent with the medical evidence and "the doctors uniformly note his limited range of motion and his arm and neck pain." Id. He specifically points to Dr. King's finding that Plaintiff had "very limited movement of the shoulders," in an attempt to demonstrate his credibility. Id.

The Commissioner argues the ALJ has discretion to discredit Plaintiff's subjective complaints as long as he provides "explicit and adequate reasons" for his decision. (Doc. 20, p. 14) (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). The Commissioner further argues the ALJ stated explicit and adequate reasons for his credibility determination which were supported by substantial evidence. Id. The Commissioner makes reference to each of the ALJ's findings which, it argues, show

support for the ALJ's credibility determination.  Specifically, The Commissioner states the ALJ found: (a) although Plaintiff did not believe he could work, he stated that "[i]f he had to work in his condition to survive, yes, ma'am, I would have to"; (b) Plaintiff did not take his medication for depression at the right times prescribed by the doctors; (c) Plaintiff stated he could read a bit and he could make change; (d) Dr. McCraney recorded that Plaintiff was not cooperative on physical examination, giving vague responses to questions and making little physical effort; (e) Dr. McCraney also noted that Plaintiff had "exaggerated pain behaviors"; and (f) in June 2004, Plaintiff complained of left upper quadrant pain but the progress notes from Halifax Medical Center indicated an upper gastrointestinal series was negative.  Id. at 13-14.

The ALJ must consider all of Plaintiff's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain or other symptoms alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  It is sufficient to support a finding of disability when Plaintiff's subjective testimony is supported by medical evidence that satisfies the standard in this case.  Id.

21

Here,  the ALJ determined Plaintiff's borderline intellectual functioning and degenerative disc disease with resultant chronic neck, left arm and lower back pain were severe impairments and therefore, Plaintiff satisfied the first part of the test. (Tr. 16, 18).  As for the second part, the ALJ specifically found that "although the evidence showed that the [Plaintiff] has medically determinable impairments that could reasonably be expected to produce the pain and other symptoms alleged, the evidence did not support the [Plaintiff's] allegations of the intensity and persistence fo such pain and other symptoms."  (Tr. 17).

Where an ALJ decides not to credit a claimant's testimony about pain and subjective allegations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  Hale v. Bowman, 831 F.2d 1007, 1012 (11th Cir. 1987).  A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

In the instant case, the Court finds the ALJ  failed to fully articulate reasons for rejecting each of Plaintiff's subjective pain complaints.  Moreover, her decision to reject Plaintiff's subjective pain complaints is not supported by substantial evidence.  Although the ALJ made note of Plaintiff's subjective complaints of pain in the neck, left shoulder and flank (Tr. 14), the ALJ only specifically referenced Plaintiff's inability to raise his arm above his head or make a fist in her decision to discount Plaintiff's subjective complaints.

(Tr. 16-17).  In dismissing Plaintiff's testimony regarding the loss of use in his left arm

and hand, the ALJ stated:

> [T]he undersigned notes that some examinations of the
> [Plaintiff's] left arm showed diminished strength and others
> did not.  In no event, however, was there a finding that the
> [Plaintiff] could not raise the arm above his hand [sic] or that
> he could not make a fist.  The [Plaintiff] demonstrated his
> alleged physical limitations to the undersigned, who found the
> demonstration unpersuasive.

(Tr. 16-17).  Such an explanation, however, is insufficient, and to some extent irrelevant,

because strength is a separate factor than range of motion.  It seems the ALJ confused

the two issues.

The ALJ also failed to mention why she rejected each of Plaintiff's physician's

findings that he was experiencing chronic pain in his back, neck, arm and hand.

Because the ALJ found Plaintiff's degenerative disc disease with resultant chronic neck,

left arm and lower back pain was a severe impairment and because Plaintiff testified he

suffered from severe pain in his back, neck, arm and hand, the ALJ should have at least

discussed his back and neck pain in her analysis regarding why she found Plaintiff's

testimony unpersuasive.

Additionally, the Court finds the ALJ's credibility determination is not supported by

substantial evidence.  As Plaintiff points out, each of his examining physicians uniformly

noted his limited range of motion and/or his pain.  For instance, Dr. Zemankiewicz

consistently documented Plaintiff's complaints of severe neck and low back pain.  (Tr.

122-136).  In fact, Dr. Zemankiewicz administered Plaintiff injections of DepoMedrol for

his pain over the course of several months.  (Tr. 122-125).  Dr. Amann noted Plaintiff

complained of "dull aching pain in the left side of the neck with radiation of pain down the

left arm to the hand and fingers" and "throbbing aching pain" in the lumbar area.  (Tr. 137).  Dr. Amann also noted Plaintiff's complaints of "sharp spasm pain with radiation into the legs" and his difficulty sleeping as well as his headaches.  Id.  Dr. Amann even recommended surgery for Plaintiff.

In its decision, the ALJ referenced Dr. McCraney's note that Plaintiff had "exaggerated pain behaviors," however, Dr. McCraney also stated Plaintiff "may well need surgery" and he found Plaintiff's range of motion was diminished in the shoulders, as well as his sensation in his left arm.  (Tr. 15, 149).   Moreover, Dr. McCraney diagnosed Plaintiff with headaches and possible cervical radiculopathy.  Additionally, Dr. King noted Plaintiff's limited movement in his shoulders, upper back and generalized discomfort in his trapezius muscles.  (Tr. 155).  Even Dr. Marone, a psychologist who examined Plaintiff, opined that Plaintiff's "physical/medical aspects may be insurmountable."  (Tr. 161).

Notably, the only specific relevant basis the ALJ gave for discrediting Plaintiff's complaints of pain was that she found his demonstration, in which he raised his left arm, unpersuasive.  This is insufficient to reject the substantial and uncontroverted medical testimony.  Bloodsworth v. Heckler, 703 F.2d 1233, 1242 (11th Cir. 1983) (finding the failure to fully consider the evidence of pain is error when corroborated by an abundance of medical evidence).

With regard to the Commissioner's argument that the ALJ noted the several factors set forth above in an attempt to explain the ALJ's credibility determination, the Court finds three out of the five factors appear to be a mere summary of Plaintiff's

testimony and are irrelevant to Plaintiff's credibility.[7]  The fact that Dr. McCraney

recorded Plaintiff as being uncooperative during his IME, as well as Plaintiff's

gastrointestinal test results from Halifax Medical Center, also have little relevance to

Plaintiff's credibility with regard to his complaints of pain.  Finally, although the ALJ noted

Dr. McCraney found Plaintiff had "exaggerated pain behavior," the fact that a doctor, who

examined Plaintiff for litigation purposes, found Plaintiff's pain may have been

exaggerated on one occasion hardly seems a sound basis to reject Plaintiff's credibility.

See Wilson, 2004 WL 557356, at * 8 (noting that one doctor's opinion suggesting the

claimant might have exaggerated his pain on one occasion was insufficient reasoning for

the ALJ to find inconsistencies in Plaintiff's statements).  Moreover, even Dr. McCraney

made note of Plaintiff's diminished range of motion in the shoulders and diminished

sensation in his left arm.

In sum, it appears the ALJ properly applied the pain standard, however, her

assessment of Plaintiff's credibility was inadequate and unsupported.  Because the ALJ's

assessment may have affected her conclusions regarding Plaintiff's residual functional

capacity and whether Plaintiff was capable of performing work within the national

economy, remand for reassessment of Plaintiff's credibility is appropriate.  See

Smallwood, 681 F.2d at 1352.  On remand the ALJ should re-weigh Plaintiff's credibility

---

[7]    The three irrelevant factors are: (a) although Plaintiff did not believe he could work, he stated that "[i]f he had to work in his condition to survive, yes, ma'am, I would have to"; (b) Plaintiff did not take his medication for depression at the right times prescribed by the doctors; and (c) Plaintiff stated he could read a bit and he could make change.  The only one of these factors which gives the semblance of having any relevancy on Plaintiff's credibility regarding his pain, is factor (a); however, Plaintiff was merely responding to the ALJ's question whether he could go back to any of the jobs which he worked in the past.  Plaintiff understood the question as asking whether he would try to work if he had to in order to survive.  Once the ALJ clarified that she was not asking if he would try, but if he physically could work, Plaintiff responded "No ma'm.  Not really." (Tr. 220).  Importantly, the ALJ also found that he could not work in any of his past jobs.

in light of all of the medical evidence documented by Plaintiff's physicians and address each of Plaintiff's subjective complaints of pain.  In the event the ALJ continues to reject Plaintiff's credibility, the ALJ should set forth a detailed explanation for doing so.

### C.   Whether the ALJ Erred in Failing to Secure Vocational Expert Testimony

In light of this Court's decision to reverse and remand this case for the two grounds stated above, it is not necessary to address Plaintiff's remaining claim that the ALJ erred in failing to secure vocational expert ("VE") testimony due to alleged non-exertional impairments.  See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1991) (noting that it may be unnecessary to review all objections when court has already remanded the case for other reasons).  The Court, however, believes Plaintiff's subjective complaints are particularly relevant in this case because at step 5 of the sequential analysis, the ALJ relied solely on the grids to make the determination that Plaintiff was able to perform work existing in the national economy.  Exclusive reliance on the grids is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills."  Walker v. Bowen, 826 F.2d 996, 1002-3 (11th Cir. 1987).  Because Plaintiff's pain (as described by Plaintiff) could significantly limit his ability to work, on remand the ALJ must make a specific credibility finding regarding Plaintiff's subjective complaints of pain.  If, after further consideration in light of this Order, the ALJ determines that any of Plaintiff's subjective complaints constitute a non-exertional impairment, she should obtain further testimony from a VE as appropriate and apply the grids as a framework in reaching a revised decision.  See 20

C.F.R. 404.1569a(d).

## V.      CONCLUSION

For the foregoing reasons, the undersigned believes the Commissioner's decision is not supported by substantial evidence, nor decided according to the proper legal standards, and is therefore **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this __16th__ day of August, 2006.


*Monte C. Richardson*
_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record